# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 3, 2010

Lyle W. Cayce
Clerk

No. 09-40436

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

SALWILLEL THOMAS FIELDS,

Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 5:06-CR-27-1

Before JONES, Chief Judge, and HIGGINBOTHAM and ELROD, Circuit Judges.

PER CURIAM:[*]

Executing a search warrant, police officers raided Salwillel Fields's home, finding drugs, cash, and guns. After securing written consent, the police searched Fields's two off-site storage lockers, discovering drugs in one. Fields pleaded guilty to being a felon in possession of a firearm[1] and to possession with

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1]18 U.S.C. § 922(g)(1).

intent to distribute crack cocaine[2] – but reserved his right to appeal the district court's denial of his motion to suppress.  He urges that the search warrant so lacked indicia of probable cause as to render reliance upon it unreasonable and that police officers doctored the consent form allowing them to search the storage lockers.   Unpersuaded, we conclude that the district court committed no reversible error.

## I.

Texas Ranger Jay Womack informed Bowie County Sheriff's Officer Captain Lance Hall that a drug-selling fugitive – Salwillel Fields – was living in Wake Village, Texas.  Hall learned that the State of Tennessee had issued six warrants for Fields's arrest, that he had been indicted for: conspiracy to sell cocaine; possession with intent to distribute cocaine and marijuana; manufacturing cocaine; possession of prohibited weapons (including an AK-47); being a convicted felon in possession of firearms (a Ruger 9mm, a Llama .45, and a Ruger .357); and money laundering.  Hall began surveilling Fields's home, where he saw Fields, confirming his identity by photograph and verifying the address by motor vehicle records.

Hall sought a search warrant for the premises, signing a seven-page affidavit averring that Fields is a drug-selling Tennessee fugitive, that based on his two decades of experience, he is of the opinion that drug offenders typically keep controlled substances and other evidence of crime in their residences.  Hall mentioned Fields's recent drug- and gun-related indictments and attached to the

---

[2] 21 U.S.C. § 841(a)(1).

No. 09-40436

affidavit Fields's criminal history.[3] The affidavit noted that Fields lived with his wife. Tennessee also had recently indicted her for gun and drug offenses. Hall intended with the search warrant to seize evidence of drug sales – including papers and currency – as well as the guns and ammunition Fields possessed.

The search warrant issued, which Ranger Womack and Captain Hall executed at 6:43 am on February 28, 2005. They kicked down the door and secured Fields, who had been asleep in the bedroom. They Mirandized him and told him they had a search warrant. The officers then asked if he wanted to tell them anything before they began searching the house. Fields responded that he would cooperate and told the officers he had a shotgun in the bathroom and drugs in the bedroom and car. The officers searched those locations, finding the contraband.

Down at the station, Ranger Womack drew up a consent form to search Fields's off-site storage lockers. Fields signed the release (witnessed by a Tennessee police officer), and the police searched Fields's two lockers. In the second locker they found drugs.

The Texas police sent Fields back to Tennessee, but, a year later, a federal grand jury in Texas returned an indictment against him charging: (1) felon in possession of a firearm;[4] (2) possession with intent to distribute cocaine and crack-cocaine;[5] and (3) possession of a firearm while trafficking drugs.[6]

---

[3]During the 1990s, Fields was convicted in Tennessee of selling a controlled substance and of attempt to sell cocaine.

[4]18 U.S.C. §§ 921(g)(1) & 924 (e)(1).

[5]21 U.S.C. § 841(a)(1).

[6]18 U.S.C. § 924(c)(1).

No. 09-40436

Fields twice moved to suppress the fruits of the searches. He claimed that the warrant was insufficient, that it was "bare bones" and full of conclusory allegations. Fields testified at the second hearing that the police never Mirandized him. He admits to signing the consent form, but he said it only had one of his storage lockers listed. He accuses the police of subsequently adding the second locker's number, the locker in which the officers found drugs.

Captain Hall testified that Ranger Womack immediately Mirandized Fields, and Fields cooperated, disclosing the locations of drugs and a gun. Ranger Womack testified that he Mirandized Fields with Hall present, obviating the need for a Miranda waiver. Womack advised Fields that they had a search warrant, and asked if Fields wanted to tell them where the contraband was located. Fields then told the officers where to find the shotgun and drugs in the home and car. Womack personally prepared the consent form to search the storage units, specifying two lockers numbered "I-7, K-2." He read the consent form to Fields, and Fields read it himself. Fields signed the form with both lockers listed as locations to be searched. Womack testified that he did not subsequently alter the consent form.

The district court, through a magistrate judge's recommendation, denied the suppression motions, addressing three issues – whether the officers could rely in good faith on the warrant, whether Fields consented to the search of his home and car, and whether Fields consented to the search of his second storage locker. The court held that the affidavit in support of the warrant was not conclusory and the police were entitled to rely on the warrant in good faith. On the consent issues, the court found Fields had "effectively and voluntarily cooperated with the police and consented to the searches." The court expounded:

No. 09-40436

> Not only is Defendant asking the Court to believe, contrary to the consistent testimony of Hall and Womack, that he never consented to the search of his home and vehicle, but Defendant also asks the Court to believe Womack . . . filled out the storage unit consent form with only the I-7 storage unit and then doctored the form by adding the K-2 unit.   The Court is unwilling to accept Defendant's testimony and instead accepts Hall and Womack's versions of the facts as true.

Fields agreed to plead guilty to two of the charges,[7] but reserved his right to appeal the denial of his suppression motion.

## II.

### A.

We begin with the search of Fields's home and car.   The government suggests that we can affirm because Fields consented to a search by pointing out the location of his shotgun and drugs.   But consent will not do.   The district court found that Fields consented to the search only after the police officers told him they had a search warrant.   The Supreme Court has long held that a search cannot "be justified as lawful on the basis of consent when that 'consent' has been given only after the official conducting the search has asserted that he possesses a warrant."[8]   Admissibility here rises and falls with the warrant.[9]

The pull of the exclusionary rule is not so strong as to suppress evidence

---

[7] 18 U.S.C. § 922(g)(1) and 21 U.S.C. § 841(a)(1).   The government dropped the rest.

[8] *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968).

[9] *See id.* at 549 ("A search conducted in reliance upon a warrant cannot later be justified on the basis of consent if it turns out that the warrant was invalid.").

obtained when officers act in good-faith reliance on a warrant.[10]  But this good-faith exception to the exclusionary rule will not apply in cases where an officer relies "on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."[11]  Fields urges that the warrant here lacks the necessary indicia, that it is bare bones.

"This court reviews conclusions of law regarding the sufficiency of a warrant *de novo*.  Our review involves a two-step process, whereby we must first determine whether the good-faith exception to the exclusionary rule applies. Only if a novel legal question is presented or the good-faith exception does not apply must we then ensure that the magistrate had a substantial basis for concluding that probable cause existed."[12]  Whether (1) knowledge of where a drug-dealer resides plus (2) an officer's experience that such people hide drugs in their homes can support reliance on a warrant is not a novel question in this Circuit, so we engage only in the good-faith analysis.[13]

"'Bare bones' affidavits contain wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause."[14]  "Generally, examples of 'bare bones' affidavits

---

[10] *See United States v. Leon*, 468 U.S. 897, 922 (1984).

[11] *Id.* at 923 (quotation marks omitted).

[12] *United States v. Shugart*, 117 F.3d 838, 843 (5th Cir. 1997) (quotation marks omitted).

[13] *See United States v. Craig*, 861 F.2d 818, 820–21 (5th Cir. 1988) ("The only instances in which th[e] maxim [that the court should rely strictly on the good-faith exception] should not be followed are those in which the resolution of a 'novel question of law . . . is necessary to guide future action by law enforcement officers and magistrates.'" (quoting *Illinois v. Gates*, 462 U.S. 213, 264 (White, J., concurring in the judgment)) (omission in original)).

[14] *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992).

No. 09-40436

include those that merely state that the affiant 'has cause to suspect and does believe' or 'has received reliable information from a credible person and does believe' that contraband is located on the premises."[15] "Although certainly not a thing of beauty,"[16] the affidavit here passes the threshold.

This court has often found good-faith reliance on a warrant to search a defendant's home where the affiant alleged (1) the defendant's involvement in drug trafficking and (2) that – based on the affiant's law enforcement experience – such criminals keep drug paraphernalia at their homes.[17] The affidavit here recited that Tennessee had recently indicted Fields on various drugs and weapons charges[18] – reasonably leading Hall to believe probable cause existed that Fields continues to be a drug dealer[19] – and that, in Hall's extensive experience, jurisdiction-fleeing, gun-toting drug dealers keep evidence of crime in their homes. Hall did not offer first-hand observation of drug crime, but that

---

[15]*United States v. Pope*, 467 F.3d 912, 920 (5th Cir. 2006) (alterations omitted).

[16]*Craig*, 861 F.2d at 823.

[17]*See, e.g., United States v. Pofahl*, 990 F.2d 1456, 1477 (5th Cir. 1993); *United States v. Kleinebreil*, 966 F.2d 945, 949 (5th Cir. 1992); *United States v. Webster*, 960 F.2d 1301, 1307 (5th Cir. 1992) ("The fact that some of these sales took place at locations other than Webster's residence is not determinative. The affidavit alleged that, based on the officer's experience, drug dealers and traffickers commonly keep caches of drugs, as well as paraphernalia and records of drug transactions, in their residences. In other words, the basis for searching Webster's residence was his overall drug trafficking and sales activity, not just those sales that actually took place at his residence.").

[18]Fields does not question the validity of these indictments, and "[a]n indictment is a conclusive finding that there is probable cause to believe that the allegations in the indictment took place." *United States v. Byrd*, 898 F.2d 450, 453 (5th Cir. 1990); *see also Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975).

[19]Hall also referred to Fields's drug-selling convictions.

No. 09-40436

Fields was a fugitive[20] wanted on drug and gun charges created an inference of ongoing criminal activity sufficient to withstand the bare bones allegation.

The officers in good faith relied on a warrant to search Fields's home.[21] Because the warrant allowed the police to search the "premises," the police could comb-through Fields's car parked on the property.[22] The district court did not err in allowing fruits of the home and car searches to come in evidence based on the good-faith exception, emphasizing again that we do not pass on whether probable cause existed.

B.

Moving to the search of Fields's storage lockers, "[a] consensual search is a[] well-established exception to the Fourth Amendment's warrant requirement. Only free and voluntary consent justifies a warrantless search. In reviewing a finding that consent was voluntarily given, this court employs a clearly erroneous standard. This standard is particularly strong when the district judge based his findings on oral testimony at the suppression hearing, as is this case here."[23]

---

[20]Fields contends that he was not a fugitive, but it is undisputed that he was in Texas and wanted on crimes committed in Tennessee.

[21]"In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. Once the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law." *United States v. Leon*, 468 U.S. 897, 921 (1984) (quotation marks and alterations omitted).

[22]*United States v. Singer*, 970 F.2d 1414, 1418 (5th Cir. 1992) ("This court has consistently held that a warrant authorizing a search of 'the premises' includes vehicles parked on the premises.").

[23]*United States v. Mata*, 517 F.3d 279, 290 (5th Cir. 2008) (footnotes omitted).

No. 09-40436

The police did not have a search warrant for Fields's off-site storage lockers, so they asked for consent. He obliged, signing a consent waiver after the police Mirandized him. Fields admits to allowing the police into locker "I-7," but not into locker "K-2" – the locker with the drugs. To get around his signed waiver for both lockers, Fields speculated that a police officer doctored his written consent by later adding-in locker "K-2." The police officers deny doing so. The district court credited the officers' testimony and not the defendant's. The clear error standard does not allow reversal in this credibility battle, and there is no other evidence to suggest that the police acted nefariously.[24]

AFFIRMED.

---

[24]"A finding of consent to search may be overturned on appeal only if found to be clearly erroneous. We will reject the trial court's finding only if, after giving due regard to the opportunity of the trial court to judge the credibility of the witnesses, we are left with the definite and firm conviction that a mistake has been committed. . . . We will not second guess the district court's credibility judgment." *United States v. Botello*, 991 F.2d 189, 194 (5th Cir. 1993) (citations, quotation marks, and alterations omitted).