# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-30235

United States Court of Appeals
Fifth Circuit

**F I L E D**
May 12, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

CASSETTI DEWAYNE BROWN,

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:10-CR-291

Before WIENER, DENNIS, and OWEN, Circuit Judges.

JAMES L. DENNIS, Circuit Judge[*]:

Defendant-Appellant Cassetti Dewayne Brown ("Brown") appeals his conviction of possession with intent to distribute 28 grams or more of crack cocaine in violation of 18 U.S.C. § 841(a)(1) and (b)(1)(B). He contends that there was insufficient evidence to support his conviction and that the district court erred in denying his motion to suppress evidence seized from his vehicle after a traffic stop and from his residence after a warrant search. We hold that the district court did not err in finding that the search of the vehicle was lawful

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-30235

under the Fourth Amendment, and denying Brown's motion to suppress the evidence seized in the vehicle. However, because the police officers who conducted the search of Brown's residence did not act in good faith and because the magistrate judge did not have a substantial basis for finding probable cause for the search of Brown's home, the district court erred in denying Brown's motion to suppress with regard to the evidence obtained during the search of his residence. We therefore affirm the district court's order denying Brown's motion to suppress the evidence found in Brown's car, reverse the district court's order denying Brown's motion to suppress the evidence found in Brown's residence, vacate the conviction and sentence, and remand for further proceedings.

## I. Background

### A. Facts

#### 1. Traffic Stop

On August 11, 2010 at approximately 11:20 p.m., Bryan Somers ("Somers"), then a police officer with the Leesville Police Department, was driving his marked police unit on highway 171 in Leesville, Louisiana. He was traveling with his drug-detecting dog, who was trained to detect narcotics. Somers conducted a traffic stop of a Jeep sports utility vehicle, driven by Brown, after Brown turned onto the highway without yielding to Somers. Brown was accompanied by Taiwanna Cole ("Cole"), who sat in the front passenger seat. When Somers approached Brown's vehicle, he observed an open container of alcohol in the center console, smelled alcohol, and noticed that Brown had bloodshot eyes and slurred speech. Brown admitted that he had been drinking earlier in the evening but stated that he was not intoxicated and that he was driving to his house "down the road." Brown and Cole both told Somers that the open container of alcohol belonged to Cole.

Somers asked for Brown's driver's license, registration documents, and proof of insurance. Brown provided his driver's license but did not have the

2

remaining documents. Somers took the license and informed Brown that he was going to conduct a computer check but that Brown could leave if the check came back clean and no further problems arose. Somers then returned to his car. While radioing for the computer check, Somers's sergeant asked if he intended to perform a K-9 free air sniff of the vehicle. Somers then remembered that, several months prior, he had been told that a K-9 officer should be summoned if Brown was pulled over during a traffic stop because Brown was the subject of an ongoing drug investigation. At this point, Somers radioed for additional officer assistance but did not conduct a K-9 open air sniff. He returned to Brown's vehicle and asked Brown to exit the Jeep. Somers informed Brown that he was a narcotics officer and asked if there were drugs or weapons in the vehicle. Brown answered that there were not. Somers then twice asked for consent to search Brown's vehicle. Brown refused both times. Somers continued to question Brown as two additional officers arrived to assist Somers, Josh Martin ("Martin") and Dakota Cryer ("Cryer"). Cryer heard Somers ask for permission to search the car the third time. This time, Brown agreed to allow the search. Somers testified that the conversation in which he asked for Brown's consent to search the vehicle lasted approximately sixty seconds.

After obtaining Brown's consent, Somers then instructed Cole to exit the Jeep. When she exited the car, Somers leaned inside the vehicle and saw a small bag that contained a second, smaller bag—described as a small, blue, plastic ziptop bag—on the center hump between the driver's seat and the passenger seat. The bag contained one rock of what appeared to be crack cocaine. The substance was subsequently tested and confirmed to be crack cocaine weighing 0.7 of a gram. Somers estimated that eight minutes elapsed from the time he pulled Brown over until the search of the vehicle was conducted.

After Somers found the substance, Martin and Cryer handcuffed Brown and Cole. Martin patted Brown down and found a folding knife and a second

No. 12-30235

object, which Martin testified looked like a "prison shank," in Brown's waistband. After transporting Brown and Cole to the police station, Martin found a small bag of marijuana and rolling papers in the back of the police car on the side where Cole had been sitting. During a subsequent interrogation, Cole said that the cocaine found in the car belonged to her but misidentified the bag as being green rather than blue.

### 2. Search Warrant and Search of Residence

While on the scene of the traffic stop, Somers contacted Charlie Lopez ("Lopez"), who at the time was a narcotics agent with the Leesville Police Department.[1] Lopez was investigating Brown for his involvement in drug trafficking. On the morning after Brown's arrest, Lopez prepared an affidavit for a search warrant for Brown's residence, located at 1729 Nona Street ("Nona Street residence" or "residence"). In the affidavit, Lopez declared that:

> On August 11, 2010 PFC Bryan Somers made a traffic stop on a 1986 Jeep Grand Cherokee . . . . While making contact with the driver, identified as Cassetti Brown, PFC Somers observed an open container of alcohol in the vehicle. PFC Somers asked Brown to step out of the vehicle with him where PFC Somers asked Brown if he had any narcotics or weapons in the vehicle. Brown gave PFC Somers verbal consent to search the vehicle. PFC Somers then had the passenger Taiwanna Cole exit the vehicle. As PFC Somers entered the vehicle to begin his search, he saw in plain view a clear plastic bag with a white substance believed to be crack cocaine located on the driver's side of the center console area. PFC Somers continued to search the vehicle, but was unable to do a thorough search due to area of the traffic stop and having to transport Brown and Cole back to Leesville Police Department. Both Brown and Cole

---

[1] Approximately two months after the events of this case, Lopez was arrested on charges of drug distribution. He pleaded guilty to distribution of anabolic steroids. He admitted to purchasing, using, and distributing anabolic steroids to at least one other member of the police force. He also admitted to selling prescription painkillers to his police chief, who was terminated from his position. John Sims, an investigator with the Leesville Police Department who was present for and assisted in the search of Brown's home, was also implicated in Lopez's distribution of steroids.

No. 12-30235

were transported to LPD in the same unit by P/O Joshua Martin and P/O Dakota Cryer. P/O Martin searched the back seat prior to placing Brown and Cole in the vehicle. During transport, both Cole and Brown were moving around in the back of the vehicle. After removing Brown and Cole from the vehicle, P/O Martin found a plastic bag containing marijuana in the back of his vehicle. Both Brown and Cole were booked into the Leesville City Jail on drug-related charges. Brown is currently on Federal Parole for drug-related charges and has a lengthy criminal history for violent and drug-related charges. Brown has also been the target of an on-going investigation for the trafficking of narcotics during the past four months which included information of how Brown packaged narcotics for sell [*sic*] which was consistent with the item located in Brown's vehicle during the traffic stop. This information was obtained through a Confidential Reliable Source. It is believed that additional narcotics may still be located in the vehicle, which was towed to the Leesville Impound Lot. It is also believed that additional narcotics and paraphernalia are located at Brown's residence.

On the basis of the affidavit, the magistrate judge signed the search warrant at 11:55 a.m. on August 12, 2010.

Prior to obtaining the warrant, Lopez sent two Leesville Police Department officers, Landon Dowdin ("Dowdin") and Jeremy Swisher ("Swisher"), to conduct a protective sweep and to secure the premises pending the search. According to the police report, they arrived at 10:59 a.m. and knocked on the front door. Heggie Reynolds ("Reynolds") answered the door. Reynolds granted them permission to do a protective sweep of the house. Dowdin and Swisher placed Reynolds in the back of the police vehicle and then conducted a sweep of the house. The officers did not find anyone else present. John Sims ("Sims"), an investigator for the Leesville Police Department, arrived at 11:17 am. Lopez arrived soon thereafter and the search commenced.[2]

---

[2] Dowdin and Swisher testified that Lopez and Sims arrived at the same time, but in separate cars. Swisher testified that when Lopez arrived, he had the search warrant with him, and that the search began soon after Lopez arrived, around 11:17 am. The radio log

No. 12-30235

Swisher searched the defendant's bedroom. He found Brown's expired identification card and mail addressed to Brown in the room. In the trash can, Swisher found a brown bag. Inside the brown bag was a large baggie that contained several small, blue-colored ziptop baggies. Each blue baggie contained a substance later tested and confirmed to be crack cocaine. There were also larger baggies containing "crack cookies." The cocaine weighed 90.6 grams. In the drawer of the bedside table, Swisher found Brown's social security card, his birth certificate, other identification with his name on it, and mail and bills addressed to Brown. The two remaining bedrooms in the house belonged to Reynolds, Brown's uncle Jerry Brown ("Jerry"), and Jerry's twelve-year-old son. Reynolds and Jerry both testified at trial that they never entered Brown's bedroom.

## B. Procedural History

Brown was indicted with one count of possession with intent to distribute 28 grams or more of a mixture or substance containing a detectable quantity of cocaine base or "crack," in violation of 21 U.S.C. § 841(a)(1). Brown's attorney filed a motion to suppress the evidence collected during the traffic stop and the evidence collected during the search of his residence. The district court conducted a suppression hearing on January 13, 2011, at which Somers and Cryer testified as government witnesses, Lopez testified as a defense witness, and Somers was recalled as a defense witness. At the conclusion of the hearing, the district court denied the motions. At trial, Brown reurged his suppression motions, which the district court denied. The district court also denied Brown's motions for judgment of acquittal, which Brown urged at the close of the government's case and again at the close of all evidence. The jury found Brown

---

reflected that Lopez was at the district court at 11:43 a.m. and en route to Brown's residence at 12:02 p.m. The warrant was signed at 11:55 a.m.

No. 12-30235

guilty.  He was sentenced to 150 months of imprisonment, followed by eight years of supervised release.  He now appeals.

## II. ANALYSIS

Brown argues that the district court erred in denying his motions to suppress the evidence obtained during the search of his vehicle and residence. In reviewing a district court's denial of a motion to suppress, we review the district court's findings of fact for clear error and its conclusions of law *de novo*. *United States v. Raney*, 633 F.3d 385, 389 (5th Cir. 2011).  Thus, while "determinations of reasonable suspicion and probable cause[] are reviewed *de novo*," *United States v. Zavala,* 541 F.3d 562, 574 (5th Cir. 2008), "[t]he voluntariness of a detainee's consent to a warrantless search is a finding of fact to be reviewed for clear error." *United States v. Tompkins*, 130 F.3d 117, 120 (5th Cir. 1997). When "a district court's denial of a suppression motion is based on live oral testimony, the clearly erroneous standard is particularly strong because the judge had the opportunity to observe the demeanor of the witnesses." *United States v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005). We view the evidence in the light most favorable to the government as the party that prevailed in the district court. *See Raney*, 633 F.3d at 389.

### A. Traffic-Stop Evidence

#### 1.

Brown contends that the district court erred in denying his motion to suppress the evidence gathered during the search of his vehicle.  "The stopping of a vehicle and detention of its occupants constitutes a 'seizure' under the Fourth Amendment." *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc).  The Supreme Court has "long held that the 'touchstone of the Fourth Amendment is reasonableness.'  Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996) (quoting *Florida v. Jimeno*, 500 U.S. 248, 250

(1991)). Under the *Terry v. Ohio*, 392 U.S. 1 (1968), two-step test, "we determine the reasonableness of an investigative stop by examining: (1) whether the officer's action of stopping the vehicle was justified at its inception, and (2) whether the officer's actions were reasonably related in scope to the circumstances that justified the stop." *United States v. Stevens*, 487 F.3d 232, 244 (5th Cir. 2007) (citing *Terry*, 392 U.S. at 19-20).

Somers had initial justification for the traffic stop based on Brown's failure to yield. Thus, the first prong of the *Terry* inquiry is not at issue, and Brown does not contend otherwise. Rather, Brown argues that the stop was unconstitutionally prolonged, and thus was unreasonable in scope under *Terry's* second prong. Under the second prong of the *Terry* test, we ask whether Somers's actions after stopping Brown's vehicle "were reasonably related to the circumstances that justified the stop, or to dispelling his reasonable suspicion developed during the stop." *Brigham*, 382 F.3d at 507. The detention of Brown and his vehicle "must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges." *Id.* (citing *United States v. Dortch*, 199 F.3d 193, 200 (5th Cir. 1999), and *United States v. Machuca-Barrera*, 261 F.3d 425, 434 (5th Cir. 2001)). Therefore, unless additional reasonable suspicion arises during the course of the stop, "once all relevant computer checks have come back clean, there is no more reasonable suspicion, and, as a general matter, continued questioning thereafter unconstitutionally prolongs the detention." *United States v. Lopez-Moreno*, 420 F.3d 420, 431 (5th Cir. 2005).

"Reasonable suspicion exists when the detaining officer can point to specific and articulable facts that, when taken together with rational inferences from those facts, reasonably warrant the search and seizure." *United States v. Estrada*, 459 F.3d 627, 631 (5th Cir. 2001). "The determination . . . must be made based on the totality of the circumstances and the collective knowledge

and experience of the officer." *Id.*  Under the collective-knowledge doctrine, an officer may rely on a prior alert or report from other law-enforcement officers to establish reasonable suspicion for a traffic stop, even if the officer conducting the stop does not himself have personal knowledge of the evidence supporting the alert.  *See United States v. Khanalizadeh*, 493 F.3d 479, 483 (5th Cir. 2007); *United States v. Ibarra-Sanchez*, 199 F.3d 753, 759 (5th Cir. 1999).  Evidence gathered during such a stop is admissible if the officer made the stop in objective reliance on another law-enforcement department's flyer or bulletin, if "the police who *issued* the flyer or bulletin possessed a reasonable suspicion justifying a stop, and if the stop that in fact occurred was not significantly more intrusive than would have been permitted the issuing department."  *United States v. Hensley*, 469 U.S. 221, 232 (1985).

Because Somers extended the stop to seek Brown's consent to search the car in objective reliance on Lopez's alert, the first inquiry should be whether Lopez possessed reasonable suspicion justifying the issuance of the alert.  However, Brown neglected to argue to the district court that Lopez's alert was not adequately founded upon reasonable suspicion.  Instead, defense counsel argued that Somers was obligated to terminate the stop once Brown's license check came back clean, and that, by the time Somers recalled the information he received from Lopez, Brown had already been unconstitutionally detained without probable cause.  In response to the district court's inquiries, Brown's counsel conceded that, if Somers had recalled the "intelligence" he received from Lopez earlier in the traffic stop, then Somers's efforts to seek Brown's consent to search would have been lawful.  Accordingly, we find that Brown waived his argument that Somers could not objectively rely upon Lopez's alert to justify the prolongation of the traffic stop.  *See United States v. Cano,* 519 F.3d 512, 515 (5th Cir. 2008) (declining to consider defendant-appellant's argument regarding the *voluntariness* of his consent to search, when defendant argued in the district

No. 12-30235

court only that the *scope* of his consent was insufficient to justify the search).[3] Thus, we may consider Lopez's alert as part of the totality of the circumstances informing Somers's decision to extend the stop. *Khanalizadeh*, 493 F.3d at 483 (finding that the officer conducting the traffic stop and subsequent search "could rely on the FBI's drug alert, even though he did not have personal knowledge of the evidence uncovered by the FBI, to establish his reasonable suspicion that the [suspect's vehicle] contained drugs"). In addition to the alert from Lopez, Somers possessed independent knowledge that Brown appeared to be drunk and that there was an open container of alcohol in the Jeep. Somers therefore had reasonable suspicion based on both his personal observations during the traffic stop and on the collective knowledge from Lopez's alert that "something illegal was afoot," beyond the initial reason for the stop, justifying a reasonable extension of the roadside detention to dispel or confirm his suspicions. *United States v. Pack,* 612 F.3d 341, 350; 355 (5th Cir. 2010).

---

[3] Even if the issue was not waived but rather was forfeited, Brown can only prevail on this argument if we find that the district court committed plain error when it relied upon Lopez's alert to justify Somers's detention and questioning. *See United States v. Pope*, 467 F.3d 912, 917 (5th Cir. 2006)*; see also United States v. Guzman*, 739 F.3d 241, 246 (5th Cir. 2014); *United States v. Scroggins*, 599 F.3d 433, 448 (5th Cir. 2010) ("[O]ur cases identifying such waiver have often proceeded to evaluate the issues under a plain error standard for good measure.").

> Under the plain error standard, we make three initial determinations: (1) whether the district court committed error; (2) whether the error is clear and obvious; and (3) whether the error affects substantial rights. If these conditions are met, we have discretion to reverse the district court if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

*Scroggins*, 599 F.3d at 449 (quotation marks and internal citations omitted). Based on the limited facts adduced in the suppression hearing regarding Lopez's alert, and viewing the evidence in the light most favorable to the government, we cannot conclude that the district court committed plain error in finding that Somers properly relied upon Lopez's alert to justify the extension of the traffic stop. "While it would be a close question under a less deferential standard of review, we do not understand the existence of [reasonable suspicion] to be plain error given these facts." *United States v. Newman*, 472 F.3d 233, 237 (5th Cir. 2006).

10

No. 12-30235

Accordingly, we conclude that Somers's actions during the stop were reasonable. After initially stopping the vehicle and observing the open container of alcohol and other evidence suggesting Brown had been drinking, Somers lawfully questioned Brown and Cole about the open container, asked whether Brown had been drinking, and inquired as to his travel plans. Thereafter, while conducting the license check, Somers recalled Lopez's alert that Brown was the subject of an ongoing narcotics investigation and Lopez's directive that, if stopped, officers should conduct a K-9 dog sniff around Brown's vehicle. Rather than conduct a dog sniff, Somers chose to extend the stop by sixty seconds to seek Brown's consent to search the vehicle. This brief prolongation of the traffic stop was an appropriate, reasonable attempt to dispel or confirm the suspicions regarding Brown's involvement in narcotics trafficking. *Id.* When we objectively consider the totality of the circumstances, including Lopez's alert, we conclude that Somers had specific, factual grounds to reasonably suspect that Brown had violated, was violating, or was about to violate drug trafficking laws, and that this reasonable suspicion justified Somers's prolongation of the traffic stop for approximately sixty seconds to seek Brown's consent to search the car. *See Brigham,* 382 F.3d at 508 (finding that a seven minute extension of a traffic stop to question the defendant regarding his travel plans and to obtain consent to search his vehicle was reasonable under the circumstances). The district court did not err in finding that the traffic stop was lawful under the Fourth Amendment.

**2.**

Brown next contends that the search of his vehicle was unconstitutional because his consent to the search was not voluntary.[4] We review the district

---

[4] Although Brown did not explicitly argue to the district court that his consent was involuntary, we find that his arguments in the district court regarding consent were adequate to preserve the issue for our review. At the suppression hearing, Brown's counsel contended that Somers improperly detained Brown while "go[ing] back and forth with" Brown "until he

11

No. 12-30235

court's factual finding of voluntariness of consent for clear error. *United States v. Solis*, 299 F.3d 420, 436 (5th Cir. 2002). As noted *supra,* we view the evidence in the light most favorable to the government as the party that prevailed in the district court, *see Raney*, 633 F.3d at 389, and, because the "district court's denial of a suppression motion is based on live oral testimony, the clearly erroneous standard is particularly strong. . . ." *Gibbs*, 421 F.3d at 357.

"A search conducted pursuant to consent is excepted from the Fourth Amendment's . . . requirements." *United States v. Solis*, 299 F.3d 420, 436 (5th Cir. 2002). Where the government asserts that no search warrant was required because the officer obtained voluntary consent for the search, the government must prove by a preponderance of the evidence that consent was freely and voluntarily given. *United States v. Tompkins*, 130 F.3d 117, 121 (5th Cir. 1997). Whether "consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). "In evaluating the voluntariness of consent, [the Fifth Circuit] look[s] to six factors: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found." *United States v. Cavitt*, 550

---

g[ave] [Somers] an answer 'yes' or 'no.'" Additionally, the questioning of the witnesses at the suppression hearing elicited facts relevant to the voluntariness inquiry; for example, Officers Somers and Cryer both testified that Brown was never threatened or intimidated before providing consent to search. On cross examination, Brown's counsel questioned the officers regarding the wording Brown used to initially refuse consent, and inquired about the timing of Brown's consent. Thus, although not artfully articulated under the relevant case law, the substance of Brown's argument at the suppression hearing was, in part, that Somers's actions in seeking the consent were coercive because they were conducted during an unlawful detention, thereby rendering Brown's consent involuntary. The district court was properly presented with this issue and we may analyze it under the ordinary standards of review.

12

F.3d 430, 439 (5th Cir. 2008).  No single factor is dispositive or controlling. *Solis*, 299 F.3d at 436.

Several factors favor a finding of voluntariness.  Brown was calm and cooperative when speaking with Somers.  Somers testified that Brown gave consent to search his vehicle approximately one minute after Brown exited the vehicle, and thus the record does not reflect that Brown was subject to a lengthy interrogation or any coercive police tactics.[5]  Somers and Cryer both testified that no threats, force, or intimidation were used to obtain Brown's consent. Additionally, while the record does not reflect Brown's education levels, the record reveals that Brown was aware he had the right to refuse consent, as he had already declined to give his consent twice.  Because no single factor is dispositive and because several factors supported a finding of voluntariness, we conclude that, viewing these facts in the light most favorable to the government and under the highly deferential standard which we are compelled to apply on review of a denial of a suppression motion after a hearing with live testimony, there is no clear error in the district court's finding that Brown voluntarily consented to the search of his car.  *See Estrada*, 459 F.3d at 634.  Therefore, under the totality of the circumstances specific to this case, neither the prolonged traffic stop nor the consensual car search violated Brown's Fourth Amendment rights.[6]  Thus, the district court did not err in determining that the evidence seized during the traffic stop is admissible.

---

[5] Although it is coercive for a police officer to retain identification documents after a lawful stop is complete, *see, e.g.*, *Cavitt*, 550 F.3d at 439, the traffic stop here had been lawfully prolonged, and thus was not completed when Somers sought Brown's consent.  Accordingly, we do not consider the retention of Brown's license coercive under these circumstances.

[6] If the prolonged traffic stop was unconstitutional, the district court would need to conclude that the consent was both voluntary and the result of an independent act of free will because "consent cannot be the product of the illegal detention." *United States v. Jenson*, 462 F.3d 399, 407 & n.10 (5th Cir. 2006).  Because the prolonged traffic stop was constitutional, we need not assess whether consent was an independent act of free will. *See Khanalizadeh*, 493 F.3d at 484.

No. 12-30235

## B. Residence Search

Brown also challenges the district court's denial of his motion to suppress evidence gathered at his residence.  Because a search warrant had been procured, we engage in a two-part test to review the district court's decision. *See United States v. Rojas Alvarez*, 451 F.3d 320, 329 (5th Cir. 2006).  "First, [we] determine[] whether the good-faith exception to the exclusionary rule applies; if it does not, [we] must ascertain whether the warrant was supported by probable cause." *Id.* at 329-30 (quoting *United States v. Gibbs*, 421 F.3d 352, 355 (5th Cir. 2005)).  For the purpose of the good-faith exception, we review the district court's evaluation of the officers' objective reasonableness *de novo*. *United States v. Payne*, 341 F.3d 393, 399 (5th Cir. 2003).

The Fourth Amendment exclusionary rule does not apply "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *United States v. Leon*, 468 U.S. 897, 920 (1984).  Under this good-faith exception, "evidence obtained by law enforcement officials acting in objectively reasonable good-faith reliance upon a search warrant is admissible in the prosecution's case-in-chief, even though the affidavit on which the warrant was based was insufficient to establish probable cause." *United States v. Shugart*, 117 F.3d 838, 843 (5th Cir. 1997) (quoting *United States v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988)).  We confine our good-faith inquiry to "the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23.  The good-faith exception does not apply, and the officer may not merely rely on the magistrate judge's determination of probable cause, when "the officer [does not have] reasonable grounds for believing that the warrant was properly issued." *Id.* at 922-23.  The exception therefore does not apply, and suppression is the appropriate remedy, where: (1) the magistrate or judge who issued the warrant

14

"was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) "the issuing magistrate wholly abandoned his judicial role"; (3) the officer relied on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.* at 923 (citations omitted) (internal quotation marks omitted); *accord United States v. Mays*, 466 F.3d 335, 343 (5th Cir. 2006).

Here, a reasonably well trained officer would have known that the search of Brown's house was based on insufficient evidence of probable cause and therefore was a violation of Brown's Fourth Amendment rights. The affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923. It was a "bare bones" affidavit, containing only "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *United States v. Satterwhite*, 980 F.2d 317, 320-21 (5th Cir. 1992). "Generally, examples of bare bones affidavits include those that merely state that the affiant has cause to suspect and does believe or [has] received reliable information from a credible person and [does] believe that contraband is located on the premises." *United States v. Pope*, 467 F.3d 912, 920 (5th Cir. 2006) (citations omitted) (internal quotation marks omitted).

Such is the case here. The brief, one-page affidavit detailed the previous night's traffic stop of Brown's vehicle but left out key details that would have better informed the magistrate of the incident. Lopez did not specify how much cocaine—namely, one rock—was recovered from the vehicle. Lopez referenced the marijuana found in the backseat of the police car after Brown and Cole were transported to the police station, but failed to specify that the marijuana was

found where Cole had been sitting, or that Brown was thoroughly patted down before being placed in the back of the car but that Cole was only given a cursory pat-down.  Lopez also misled the magistrate by asserting that Brown was on federal parole for drug-related charges when he was in fact on supervised release for a weapons charge.  As the affiant, if Lopez did not know his information to be false, he should have known except for his reckless disregard of the truth.

In the second half of the affidavit, Lopez declared that "Brown has also been the target of an ongoing investigation for the trafficking of narcotics during the past 4 months which included information of how Brown packaged narcotics for sell [*sic*] which was consistent with the item located in Brown's vehicle during the traffic stop.  This information was obtained through a confidential reliable source."  Lopez did not provide any details about the investigation or the reliability of the confidential source.  Although he noted that the informant's information about packaging was consistent with what was found in the car, he did not explain how they were consistent or if the packaging was unique to Brown.  Indeed, Somers testified at trial that the packaging—a small, ziptop baggie—was a common way to package cocaine rocks.

"An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause," and the mere statement that the affiant "received reliable information from a credible person" is inadequate to provide such a basis.  *Illinois v. Gates*, 462 U.S. 213, 239 (1983).  When an affiant relies upon information obtained from an informant, the affiant must provide sufficient information to allow the magistrate to determine, by reviewing the totality of the circumstances, whether the informant's information is sufficient to create probable cause.  *Id.* at 238-39, 240-41.  Lopez failed to provide such information in his affidavit.  His "wholly conclusory statements . . . lack[ed] the facts and circumstances from which a magistrate can independently determine probable cause."  *Satterwhite*, 980 F.2d at 321.

16

No. 12-30235

Moreover, the affidavit provided no information linking the drug-trafficking investigation to Brown's residence. "Facts in the affidavit must establish a nexus between the house to be searched and the evidence sought. The nexus may be established through direct observation or through normal inferences as to where the articles sought would be located." *Payne*, 341 F.3d at 400. Lopez did not present any evidence, either direct or inferential, linking the investigation to Brown's home.[7] He did not reference the residence until the concluding paragraph of the affidavit, at which point he attested only that: "It is believed that additional narcotics may still be located in the vehicle. . . . It is also believed that additional narcotics and paraphernalia are located at Brown's residence." We have held that such bare-bones statements cannot support the good-faith exception. *See Pope*, 467 F.3d at 920; *United States v. Brown*, 941 F.2d 1300, 1303 n.1 (5th Cir. 1991) (per curiam) ("Examples of 'bare bones' affidavits include one that states the affiant 'has cause to suspect and does believe' . . . and one where the affiants 'have received reliable information from a credible person and do believe' . . . .").

Lopez and the remaining officers could not have acted in objectively-reasonable good-faith reliance upon the search warrant because the affidavit in support of the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (citations omitted) (internal quotation marks omitted). Therefore, the good-faith exception does not apply and we proceed now to the second step of the test to consider whether probable cause existed for the warrant. *Rojas Alvarez*, 451

---

[7] Indeed, at the suppression hearing, Lopez still failed to testify as to a nexus between Brown's car and his residence. Lopez testified that a confidential informant told him that "Brown was going to locations and bringing back . . . large quantities of crack cocaine." Lopez testified that he went to one of those locations to see if he could find evidence verifying that the transaction took place, but did not state whether he discovered any evidence that Brown traded drugs there. Moreover, the confidential informant's information did not give Lopez any indication that Brown used his house as a base to store and package drugs.

No. 12-30235

F.3d at 329-30. Probable cause must be established in the affidavit and evidence presented to the magistrate; an "otherwise insufficient affidavit cannot be rehabilitated by testimony concerning information possessed by the affiant when he sought the warrant but not disclosed to the issuing magistrate." *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 565 n.8 (1971). "Probable cause exists when under the 'totality of the circumstances . . . there is a fair probability that contraband or evidence of a crime will be found *in a particular place*.'" *United States v. Newman*, 472 F.3d 233, 237 (5th Cir. 2006) (alteration in original) (emphasis added) (quoting *Gates*, 462 U.S. at 238). It "means something more than mere suspicion. Probable cause requires the existence of facts sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed and the person to be arrested (or searched) committed it." *United States v. Froman*, 355 F.3d 882, 889 (5th Cir. 2004) (quoting *United States v. Gordon*, 580 F.2d 827, 832-33 (5th Cir. 1978)) (internal quotation marks omitted). "A magistrate needs only a substantial basis for concluding that a search would uncover wrongdoing." *United States v. Allen*, 625 F.3d 830, 840 (5th Cir. 2010). However, "[a]lthough we accord great deference to a magistrate's determination of probable cause, we will not defer to a warrant based on an affidavit that does not provide the magistrate with a substantial basis for determining the existence of probable cause." *Kohler v. Englade*, 470 F.3d 1104, 1109 (5th Cir. 2006) (quoting *Leon*, 468 at 914-15) (internal quotation marks omitted).

The affidavit did not provide the magistrate with the substantial basis he needed to conclude that there was probable cause to justify the search. Lopez attested that his confidential informant was reliable but did not provide any facts upon which the magistrate could rely to make his own determination as to the informant's reliability. *See Kohler*, 470 F.3d at 1110-11 (explaining that there is no probable cause when officers rely on anonymous tips, offer no

No. 12-30235

indication in the affidavit as to the tipster's credibility or basis for the tipster's information, and offer no independent corroboration of the tips).  Lopez did not disclose any details about his investigation into Brown other than the vague statement that the cocaine package in the car was consistent with the informant's description of Brown's packaging methods.  Moreover, Lopez provided no specific facts that would allow the magistrate to conclude that there was a fair probability that drugs would be found in Brown's residence.  The affidavit contained no facts regarding the residence itself.  Rather, in the affidavit, Lopez made only a bare-bones assertion that it was believed that drugs would be found in the residence. Considered in totality, the affidavit—which failed to provide specific facts as to the credibility of the informant, Lopez's investigation into Brown's trafficking activities, or the nexus  between Brown's trafficking activities and his residence—was insufficient to allow the magistrate to assess whether there existed probable cause to search Brown's residence.

The district court clearly erred in finding that the officers acted in good faith in relying on the warrant and in finding that the warrant was not lacking in indicia of probable cause.  Because the search of Brown's residence violated his Fourth Amendment rights, the district court erred in denying Brown's motion to suppress evidence gathered during the search.[8]

## CONCLUSION

We AFFIRM the district court's denial of Brown's motion to suppress the evidence collected during the traffic stop, REVERSE the district court's denial of Brown's motion to suppress the evidence collected during the search of Brown's residence, VACATE the conviction and sentence, and REMAND for further consistent proceedings.

---

[8] Because we reverse the district court's decision regarding the motion to suppress the evidence found in the residence and remand for further proceedings, we do not reach Brown's other points on appeal, namely whether the prosecutor made improper prosecutorial statements and whether there was sufficient evidence to support the conviction.

No. 12-30235