# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 26, 2020

Lyle W. Cayce
Clerk

No. 19-10498

United States of America,

*Plaintiff—Appellant*,

*versus*

Corey Jevon Bell,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:15-CR-498

Before Jones, Haynes, and Ho, *Circuit Judges*.

Per Curiam:*

The Government appeals an order suppressing evidence that law enforcement officers collected from a house associated with Defendant Cory Jevon Bell pursuant to a search warrant. We conclude that the good-faith exception to the exclusionary rule applies, VACATE the district court's order, and REMAND for further proceedings consistent with this opinion.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 19-10498

## I.     Background

This case concerns a warrant obtained in a state court by the Dallas Police Department of a residence located on West Laureland Road (the "Residence") following a series of drug transactions between an undercover officer and Bell over the course of four months in 2015.  Bell's motion to suppress relied entirely on the claim that the affidavit filed to obtain the warrant lacked sufficient facts and was "bare bones."

Detective Dustin Kelly provided the affidavit at issue.  Detective Kelly's affidavit first noted that, based on his training and experience, drug traffickers often keep drugs and other contraband in their homes.  Detective Kelly's affidavit then provided a series of direct observations concerning the officers' investigation of Bell.  The affidavit noted that, while operating undercover, Detective Kelly had bought methamphetamine from Bell on three occasions.  The first time, Bell arrived in a silver car.  The second time, Bell arrived in a maroon car.  After the second transaction, Detective Kelly examined Bell's arrest records, travelled to Bell's last known address identified by those records—the Residence—and saw both the silver car and the maroon car parked out front.  Prior to calling Bell for the third (and final) transaction, Detective Kelly directed other undercover detectives to stake out the Residence.  Before the transaction, those detectives saw Bell pull up in the maroon car, park, and enter the house.  About an hour later, Detective Kelly called Bell to initiate the transaction, and the undercover detectives saw Bell leave the Residence, get into the silver car, and drive directly to the meeting with Detective Kelly.  At that meeting, Bell sold Detective Kelly methamphetamine.  Bell was arrested shortly thereafter.

On the basis of Detective Kelly's affidavit, the state court issued a search warrant.  Law enforcement officers then searched the Residence, finding a shotgun, cocaine, and methamphetamine, as well as scales and drug-

packing materials. Bell was ultimately charged with various drug and firearm offenses in federal district court.

Shortly before trial was set to begin, Bell moved to suppress evidence collected during the search of the Residence. The district court granted Bell's motion, announcing its decision first from the bench (with accompanying minutes on the electronic docket) and later in a written order. The Government timely appealed.[1]

## II.    Jurisdiction & Standard of Review

The district court had jurisdiction under 18 U.S.C. § 3231. As required for an interlocutory appeal of an order suppressing evidence, the Government filed a notice of appeal and a certification from the United States Attorney representing that the appeal was not taken for purpose of delay and that the evidence was substantial proof of a fact material to the proceedings. 18 U.S.C. § 3731. We therefore have jurisdiction to review the district court's order.

In considering a district court's ruling on a motion to suppress, we review the court's factual findings for clear error and its legal conclusions de novo. *United States v. Moore*, 805 F.3d 590, 593 (5th Cir. 2015). We consider

---

[1] The Government filed its notice of appeal within 30 days of the district court's announcement from the bench that it was "going to grant" Bell's motion and the accompanying minutes indicating that the motion was "GRANTED" and that an order was "forthcoming," but before that order was actually handed down. Although it preceded the district court's written opinion, the Government's appeal was not premature: Federal Rule of Appellate Procedure 4(b)(2) tells us to treat a notice of appeal filed after the district court announces an order but before that order is entered (like the notice of appeal here) as if it was filed on the date the order was actually entered. *Cf. United States v. Vasquez*, 121 F. App'x 17, 18 (5th Cir. 2004) (per curiam) (reasoning that a notice of appeal may be filed before entry of an order if the district court has already announced its decision).

the evidence in the light most favorable to the prevailing party below, here, Bell. *Id.*

### III.    Discussion

Among other protections, the Fourth Amendment requires that all warrants be supported by probable cause. *See* U.S. CONST. amend. IV. Evidence collected in violation of that requirement is typically subject to the exclusionary rule and may be suppressed to deter future law enforcement misconduct. *See United States v. Ganzer*, 922 F.3d 579, 584 (5th Cir.), *cert. denied*, 140 S. Ct. 276 (2019) (mem.). But application of the exclusionary rule is not "automatic"; in the warrant context, for example, evidence collected pursuant to a legally deficient warrant may nonetheless be permitted if officers relied on that warrant in objective good faith. *Id.* at 584–85 (summarizing the Supreme Court's recognition of the "good-faith" exception in *United States v. Leon*, 468 U.S. 897, 919–20 (1984)). Moreover, we typically conclude that officers did so unless, as relevant here, the affidavit they submitted to get the warrant is so "bare bones" that the court issuing the warrant could not reasonably find probable cause. *See Leon*, 468 U.S. at 915–16; *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992). If a court concludes that the good-faith exception applies, then suppression is inappropriate and it is unnecessary to examine whether probable cause supports the warrant. *Moore*, 805 F.3d at 593.

The district court here identified several circumstances in which the good-faith exception does not apply, but ultimately held that the affidavit was "bare bones," concluding that "the officer relied on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *See United States v. Brown*, 567 F. App'x 272, 281 (5th Cir. 2014) (quoting *Leon*, 468 U.S. at 923). Because application of the good-faith exception constitutes a legal question concerning the objective

reasonableness of the officers' reliance on the warrant (which, as the district court noted, does not require any factual findings), we review the district court's decision de novo. *See Satterwhite*, 980 F.2d at 321.

We conclude that the evidence supports only one conclusion: that the officers relied in good faith on the warrant issued by the state court. The primary issue in this case is the nexus requirement: whether the warrant was supported by facts suggesting that there would be drugs or other contraband in the Residence. *See generally United States v. Freeman*, 685 F.2d 942, 949 (5th Cir. 1982) (discussing the nexus requirement). Either "direct observation" or "normal inferences" can support such a connection. *Id.* But, under the good-faith exception, we do not assess whether there definitively was such a nexus—we instead consider whether officers objectively could reasonably believe that there was. *See Satterwhite*, 980 F.2d at 320. The question here is therefore: did the officers provide enough observations and inferences indicating contraband was likely to be found at the Residence that they could reasonably believe the state court's probable cause determination?

The answer is "yes." The affidavit noted that Bell had sold drugs to an undercover officer on three occasions. It identified that Bell drove two cars as he went about those sales—both of which were later seen outside the Residence. It noted that, according to arrest records, the Residence was Bell's last known address. Perhaps most significantly, it stated that Bell proceeded directly from the Residence to a drug sale after he was called to arrange a transaction. These observations were coupled with inferences, drawn from Detective Kelly's training and experience, that individuals involved in the drug trade often keep contraband in their residences. Given these observations and inferences, the state court could reasonably conclude

that there were likely drugs and other contraband at the Residence.[2]   The officers could therefore rely on the warrant they received in good faith.

We note that the various connections between Bell's activity and the Residence distinguish this case from *Brown*, 567 F. App'x at 272, which the district court relied on in its suppression order.  In *Brown*, the affidavit contained *no* evidence linking the defendant's drug trafficking to his home, only a bare statement indicating that officers "believed" that there were drugs there.  *Id.* at 282–83.  As we have discussed, there was considerably more to suggest that Bell kept drugs in the Residence—including direct observations that Bell travelled directly from the house to a drug sale, as well as inferences that Bell, like other drug traffickers, was likely to have contraband in his residence.  Indeed, in cases running the gamut from large conspiracies to small-quantity user-level deals, we have consistently concluded that such a combination of observations connecting a defendant's drug trafficking to a particular location and inferences regarding the tendencies of drug traffickers to keep contraband in their residences makes an affidavit more than "bare bones."    *See, e.g.*, *United States v. Fields*, 380 F. App'x 400, 403–04 (5th Cir. 2010) (per curiam); *United States v. Gildon*, 340 F. App'x 956, 957 (5th Cir. 2009) (per curiam); *United States v. Pofahl*, 990 F.2d 1456, 1477 (5th Cir. 1993); *United States v. Kleinebreil*, 966 F.2d 945,

---

[2] Just a few years before the events in this case, we concluded that materially identical facts established probable cause.  In *United States v. Aguirre*, 664 F.3d 606, 610–11 (5th Cir. 2011), we held that a set of officers had probable cause to search a mobile home because they had just arrested a resident of the home directly after the resident left the home, had found drugs in the resident's possession, had evidence that the resident had previously sold drugs to an informant, and had training and experience suggesting that drug dealers often keep assets and drug paraphernalia at their residences.  Bell's attempts to distinguish *Aguirre* are unavailing—our probable cause reasoning in that case remains good law and supports application of the good-faith exception here.

949 (5th Cir. 1992). Like the affidavits in those cases, the affidavit at issue here provided enough facts that officers could rely in good faith on the state court's probable cause determination.[3]

## IV.    Conclusion

The affidavit provided to the state court contained sufficient facts connecting Bell to the Residence for officers to rely on the warrant that court issued in good faith.  The district court's order suppressing evidence from the search of the Residence is therefore VACATED, and the matter is REMANDED for further proceedings consistent with this opinion.

---

[3] Bell also suggests that we should not apply the good-faith exception because, he asserts, the affidavit deliberately omitted facts suggesting that Bell did not directly sell drugs at the Residence and that Bell may have resided at a different address.  Those arguments fail.  The allegedly omitted facts can be easily inferred from the affidavit, which said nothing about any drug sale at the Residence and merely identified that Bell's arrest records indicated that the Residence was his last known address.  Those facts also do not undermine the affidavit's various observations directly tying Bell to the Residence; whatever other addresses he was associated with, the affidavit provided firm footing to conclude that he was at the Residence immediately prior to at least one drug transaction.