**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 92-8002
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

BRADFORD SATTERWHITE, III,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
_____
(December 17, 1992)

Before GOLDBERG, SMITH, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Defendant, Bradford Satterwhite, III, entered a conditional plea of guilty to the charges of conspiracy to possess with intent to distribute cocaine base, and possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 846 (1988). Satterwhite raises two issues on appeal. First, he argues that the federal prosecution of his case violated his due process rights. Second, Satterwhite contends that the district court erred in denying his motions to suppress evidence. Finding no reversible error, we affirm.

**I**

A confidential informant ("the CI") told DEA agent Gray Hildreth that he had received information from an acquaintance that cocaine was being stored and manufactured at Satterwhite's apartment. The acquaintance, Jimmie Cooks, had asked the CI to drive him to Satterwhite's apartment so that Cooks could purchase crack cocaine. The CI saw Cooks enter the apartment. When Cooks returned from the apartment, he showed the CI some crack cocaine. Cooks also told the CI that he saw a large quantity of crack cocaine in the apartment, and that Satterwhite was a financier of a cocaine distribution ring, which was using the apartment to store and manufacture cocaine. In addition, Cooks informed the CI that he had recently purchased at least three kilograms of cocaine, and delivered it to Satterwhite's apartment.

Agent Hildreth conveyed this information in an affidavit[1] to

---

[1]    The affidavit reads, in relevant part:

Your affiant states that the facts which establish probable cause necessary for the issuance of a search warrant for the described premises are as follows:

1.    The undersigned Affiant, Andrew Gray Hildreth, having been placed under oath, deposes and states as follows:  Affiant has worked as a Special Agent for the U.S. Drug Enforcement Administration since August 21, 1986.  Prior to that date Affiant worked as an officer for the Mobile, Alabama Police Department for ten years. Affiant has extensive experience in the investigation of narcotics smuggling, sales, and other violations of Title 21 of the U.S. Code.

2.    In early August 1990, your affiant along with Austin Police Officers J.W. Thompson and Gary Duty debriefed a cooperation individual in regards to the narcotic trafficking from apartment #108 of the Forest Creek Village apartments located at 1401 St. Edwards Drive, Austin, Travis County, Texas.  This cooperating individual was arrested in July of 1990 by the Repeat Offender Program of the Austin Police Department for possession for cocaine and is currently on bond for that charge.   This cooperating individual has provided officers of the Repeat Offender Program true and accurate information, on at least two occasions since the CI's arrest.  This information has been corroborated as being true and correct and has subsequently led to the arrest of individuals and the seizure of controlled substances by the Austin Police Department on at least one occasion. Further, this cooperating individual has provided the names, addresses and other personal information of other suspected narcotic traffickers corroborated by officers to be true and correct.   In consideration of the aforementioned facts, it is the opinion of the your affiant and the opinion of officers in the Repeat Offender Program that this cooperation individual is credible and reliable.

3.    The cooperating individual stated that on Friday, August 3, 1990, he received information from an acquaintance, Jimmie Cooks that apartment #108 of the Forest Creek Village Apartments located at 1401 St. Edwards Drive, Austin, Travis County, Texas is being used to store and manufacture crack cocaine.  Cooks requested the cooperating individual to drive him to the above described apartment for the purpose of obtaining crack

-3-

cocaine. The cooperating individual stated that he drove Jimmie Cooks to the above named apartment and observed Jimmie Cooks enter the apartment. Upon returning from inside the apartment, Cooks showed the cooperating individual a distributable amount of crack cocaine. Cooks further told the cooperating individual that he . . . had traveled to Galveston, Texas in the recent period of time and brought back at least three kilograms of cocaine and delivered the cocaine to the above described apartment. Cooks also told the cooperating individual that while inside the above described apartment he . . . had observed a large quantity of crack cocaine and identified the apartment as being a place used to manufacture and distribute crack cocaine. The cooperating individual states that he was told by Jimmie Cooks that the above described apartment is maintained and operated by a crack cocaine distribution organization that includes B.J. Satterwhite, a financier in the organization.

4. Texas Department of Public Safety Criminal History records indicate that Bradford Satterwhite III, Black male born 12/26/44, aka B.J. Satterwhite, has 6 previous arrests and at least 4 convictions, including 2 convictions for possession of dangerous drugs and is currently on State of Texas parole for dangerous drugs until January 1994.

. . . .

8. A check with the City of Austin Electric Utility Customer records indicate that the account at apartment #108 is subscribed to by Joseph Walker with Texas DL number 07750414 listed on the record.

. . . .

10. A check of the Austin Police Department computerized offense report records show that on 1/17/88, in offense report # 88-0012864, a burglary of a non-residence (game arcade), Joseph Walker reported his employer as Game World, 3101 E. 12th Street. Walker told the reporting officer that he believes the motive for the burglary was to obtain drugs. The report state that the business is managed by B.J. Satterwhite. Offense report #90-0310340, dated 1/31/90, reflects that Joseph Walker is employed by J.B. Motors located at 4700 Loyola. The cooperating individual advised your affiant that J.B. Motors is owned by Jimmie Cooks. City of Austin Electric Customer Utility records reflect that the account at 4700

a magistrate, who subsequently issued a warrant to search Satterwhite's apartment. Upon executing the warrant, agent Hildreth and officers of the Austin Police Department discovered large quantities of crack cocaine, cash, and tally sheets in the apartment. The officers subsequently arrested Satterwhite, and referred his case for federal prosecution. Satterwhite was charged with conspiracy to possess with intent to distribute cocaine base and possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 846 (1988).

The district court denied two motions to suppress evidence obtained from the search of the apartment. The court found that the affidavit supporting the search warrant contained adequate probable cause and that the warrant was clearly valid on its face. Pursuant to a conditional guilty plea, the district court sentenced Satterwhite to 210 months in prison, a five-year term of supervised release, and a mandatory special assessment of $100.00.

Satterwhite appeals, contending that: (1) the absence of a policy governing the referral of his case for federal prosecution violated his due process rights; and (2) the district court erred in denying his motions to suppress evidence, because the affidavit supporting the search warrant was based on unreliable hearsay.

**II**

---

Loyola #120 is in the name of Joseph Walker with Texas DL number 07750414 shown on the record.

Record on Appeal, vol. 1, at 152-53.

**A**

Satterwhite first argues that the decision to refer his case for federal prosecution violated his due process rights because it adversely affected his sentence[2] and was made without any reviewable guidelines. We disagree.

We recently decided this issue in *United States v. Carter,* 953 F.2d 1449 (5th Cir.), *cert. denied,* ___ U.S. ___, 112 S. Ct. 2980, 119 L. Ed. 2d 598 (1992). In *Carter,* the defendant argued that the decision to refer his case for federal prosecution violated his due process rights "because it exposed him to substantially more severe sentences and was made without any objective or reviewable guidelines or standards." *Id.* at 1462. We concluded that "the ultimate decision of whether or not to charge a defendant presumably rests with the federal prosecutor . . . [who] has complete discretion in deciding whether or not to prosecute or what charge to file." *Id.* "[Because] a defendant may be prosecuted and convicted under a federal statute even after having been convicted in a state prosecution based on the same conduct," *id.,* we held that the defendant's claim lacked merit. Accordingly, Satterwhite's argument also lacks merit.[3]

---

[2] In federal court, Satterwhite was sentenced to 210 months with no time off for good behavior. *See* Record on Appeal, vol. 1, at 182. He claims that had his case been referred to state court, he probably would have received the same sentence, *but* with the opportunity to reduce his time through good behavior. *See* Brief for Satterwhite at 4.

[3] Satterwhite conceded at oral argument that *Carter* makes his first point of error moot.

**B**

Satterwhite argues next that the district court erred in refusing to suppress evidence obtained from searching his apartment. We engage in a two-step review of a district court's denial of a motion to suppress evidence obtained pursuant to a warrant: (1) whether the good-faith exception[4] to the exclusionary rule applies; and (2) whether probable cause supported the warrant. *See United States v. Webster,* 960 F.2d 1301, 1307 (5th Cir.), *cert. denied,* ___ U.S. ___, ___ S. Ct. ___, 61 U.S.L.W.. 3285 (1992).

However, we need not reach the probable cause issue if the good-faith exception applies, and the case does not involve a "novel question of law whose resolution is necessary to guide future action by law enforcement officers and magistrates." *Illinois v. Gates,* 462 U.S. 213, 264, 103 S. Ct. 2317, 2346, 76 L. Ed. 2d 527 (1983) (White, J., concurring); *United States v. Maggitt,* 778 F.2d 1029, 1033 (5th Cir. 1985) (quoting *Gates*), *cert. denied,* 476 U.S. 1184, 106 S. Ct. 2920, 91 L. Ed. 2d. 548 (1986); *see United States v. Craig,* 861 F.2d 818, 820 (5th Cir. 1988) ("Principles of judicial restraint and precedent dictate that, in most cases, we should not reach the probable cause issue if . . . the good-faith exception of *Leon* will resolve the matter."). This case does not raise a novel question of law under the Fourth Amendment. The only question is whether, on the particular facts of this case, the affidavit supporting the search warrant

---

[4] *See United States v. Leon,* 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984).

established probable cause to search the apartment.  We therefore turn to the good-faith issue first.

In *Leon,* the Supreme Court held that evidence obtained by officers in objectively reasonable good-faith reliance upon a search warrant is admissible, even though the affidavit on which the warrant was based was insufficient to establish probable cause. *See Leon,* 468 U.S. at 922-23, 104 S. Ct. at 3420; *Craig,* 861 F.2d at 821.  This rule does not apply where the warrant is based on an affidavit "`so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'"  *Leon,* 468 U.S. at 923, 104 S. Ct. at 3421 (quoting *Brown v. Illinois,* 422 U.S. 590, 610-11, 95 S. Ct. 2254, 2265-66, 45 L. Ed. 2d 416 (1975) (Powell, J., concurring in part)); *see Craig,* 861 F.2d at 821 (referring to this type of affidavit as a "bare bones" affidavit). Satterwhite argues that the affidavit supporting the search warrant for his apartment was a "bare bones" affidavit, which made agent Hildreth's reliance on the warrant unreasonable.

We review de novo the reasonableness of an officer's reliance upon a warrant issued by a magistrate.  *U.S. v. Wylie,* 919 F.2d 969, 974 (5th Cir. 1990).  When a warrant is supported by more than a "bare bones" affidavit, officers may rely in good faith on the warrant's validity.  *United States v. Pigrum,* 922 F.2d 249, 252 (5th Cir.), *cert. denied,* ___ U.S. ___, 111 S. Ct. 2064, 114 L. Ed. 2d 468 (1991); *United States v. Settegast,* 755 F.2d 1117, 1122 n.6 (5th Cir. 1985).  "Bare bones" affidavits contain wholly conclusory statements, which lack the facts and circumstances from which a

magistrate can independently determine probable cause. *See United States v. Brown,* 941 F.2d 1300, 1303 n.1 (5th Cir.) (per curiam) (giving as an example, an affidavit that states the affiant "`has cause to suspect and does believe'" that contraband is located on the premises (quoting *Nathanson v. United States,* 290 U.S. 41, 54 S. Ct. 11, 78 L. Ed. 159 (1933))), *cert. denied,* ___ U.S. ___, 112 S. Ct. 648, 116 L. Ed. 2d 665 (1991).

We conclude that the CI's personal observations and Cooks's statements to the CI provided the magistrate with more than a "bare bones" affidavit. Agent Hildreth's affidavit contains facts which the CI personally observed. As stated in the affidavit, the CI accompanied Cooks to the apartment for the purpose of buying cocaine. *See* Record on Appeal, vol. 1, at 152. Once there, the CI saw Cooks enter the apartment and return carrying cocaine. *See id.* This information provided the magistrate with facts, and not mere conclusions, from which he could determine probable cause.[5]

Satterwhite maintains that the CI's observations are unreliable hearsay, because neither agent Hildreth nor the CI had

---

[5]    Satterwhite contends that Cooks may have had the cocaine on his person before he entered the apartment, and that therefore the CI's observations cannot establish probable cause for a search warrant. We disagree. Determining probable cause does not require certainty, but only a probability that contraband or evidence is located in a certain place. *See Gates,* 462 U.S. at 230-31, 103 S. Ct. at 2328; *see also United States v. Fluker,* 543 F.2d 709, 714 (9th Cir. 1976) (finding probable cause on similar facts, notwithstanding argument that an informant who was not searched before entering defendant's apartment could have had the drugs on his person when he entered the apartment). Furthermore, Satterwhite does not offer, and we cannot find, any explanation for why Cooks might have wanted to deceive the CI.

personal knowledge that Satterwhite's apartment contained drugs. Satterwhite therefore argues that the government is attempting to put flesh on an otherwise "bare bones" affidavit by the use of unreliable hearsay.

An affidavit may rely on hearsay))information not within the personal knowledge of the affiant, such as an informant's report))as long as the affidavit presents a "`substantial basis for crediting the hearsay.'" *Gates,* 462 U.S. at 242, 103 S. Ct. at 2334 (quoting *Jones v. United States,* 362 U.S. 257, 269, 80 S. Ct. 725, 735, 4 L. Ed. 2d 697 (1960)). In assessing the credibility of an informant's report, we examine the informant's veracity and basis of knowledge. *See id.* at 230-33, 103 S. Ct. at 2328-29 (these two factors are relevant considerations under the "totality of the circumstances" test for valuing an informant's report).

The affidavit supporting the search warrant for Satterwhite's apartment adequately demonstrated the CI's veracity. The affiant asserted that the CI had in the past given true and accurate information leading to arrests and the seizure of controlled substances. The affiant further asserted that the CI had accurately provided the names and addresses of other suspected narcotic traffickers. These assertions sufficiently establish the CI's veracity. *See United States v. McKnight,* 953 F.2d 898, 905 (5th Cir.), *cert. denied,* ___ U.S. ___, 112 S. Ct. 2975, 119 L. Ed. 2d 594 (1992) (assertion that informant had in the past given true and reliable information sufficiently establishes veracity).

The affidavit also sufficiently demonstrated the CI's basis of knowledge. The affiant stated that the CI saw Cooks enter and leave Satterwhite's apartment, whereupon Cooks showed the CI some cocaine. That the CI personally observed these events demonstrates that he obtained his information in a reliable way. *See Spinelli v. United States,* 393 U.S. 410, 425, 89 S. Ct. 584, 593, 21 L. Ed. 2d 637 (1969) (White, J., concurring) ("[If an informant's] report . . . purports to be first-hand observation, remaining doubt centers on the honesty of the informant, and that worry is dissipated by the officer's previous experience with the informant.").

Moreover, the affidavit contains information within the personal knowledge of agent Hildreth which tends to corroborate the CI's story. *See Gates,* 462 U.S. at 242, 103 S. Ct. at 2334 ("An officer `may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge.'" (quoting *Jones,* 362 U.S. at 269, 80 S. Ct. at 735)). Agent Hildreth discovered that Satterwhite had six previous arrests and at least four convictions, including two convictions for possession of dangerous drugs. The affidavit also states that Satterwhite was on probation at the time for his involvement with dangerous drugs. *See Jones,* 362 U.S. at 271, 80 S. Ct. at 736 (that defendant was known user of narcotics corroborated informant's report); *United States v. Farese,* 612 F.2d 1376, 1379 (5th Cir.) (that defendant had an extensive criminal

-11-

record corroborated informant's report), *cert. denied,* 447 U.S. 925, 100 S. Ct. 3019, 65 L. Ed. 2d 1118 (1980).

Agent Hildreth also discovered that the account for the apartment's utility bill belonged to Joseph Walker. *See* Record on Appeal, vol. 1, at 153. Police records indicated that Walker had worked at a game arcade managed by Satterwhite, and had also worked for J.B. Motors, supposedly owned by Cooks. *Id.* These facts also tend to corroborate the CI's story by establishing a connection between Cooks, Walker, and Satterwhite. Because the affidavit established a substantial basis for crediting the CI's observations, the government does not add to an otherwise "bare bones" affidavit with unreliable hearsay.

Cooks's statements to the CI further support the sufficiency of agent Hildreth's affidavit. Cooks stated that: (1) he had seen large amounts of cocaine in the apartment; (2) he had purchased cocaine, and delivered it to defendant's apartment; and (3) Satterwhite was a financier of a drug distribution ring, which was operating the apartment to manufacture and store crack cocaine. *See* Record on Appeal, vol. 1, at 152. Because this information was not within the personal knowledge of the affiant, these statements constitute hearsay (Cooks's statements) within hearsay (the CI's report). Satterwhite argues that Cooks's statements are unreliable double hearsay, and should not be used to support the affidavit.

Where an informant's report is not based on personal knowledge, but rather on the information of a second individual, we must determine whether a substantial basis exists for crediting the

second individual's information. *See Spinelli,* 393 U.S. at 410, 425, 89 S. Ct. at 593 (White, J., concurring) ("If the affidavit rests on . . . an informant's report . . . the informant must declare either (1) that he has himself seen or perceived the fact or facts asserted; or (2) that his information is hearsay, but there is good reason for believing it))perhaps one of the usual grounds for crediting hearsay information."); *United States v. Smith,* 462 F.2d 456, 458 (8th Cir. 1972) (upon receiving affidavit which contains hearsay upon hearsay, magistrate need not categorically reject double hearsay information, but is called upon to determine whether information gained in reliable way).

The CI corroborated Cooks's statements by observing cocaine on his person after he returned from Satterwhite's apartment. *See* Record on Appeal, vol. 1, at 152. Agent Hildreth's independent corroboration of the CI's story also tends to corroborate Cooks's statements. *See id.* at 153. "It is enough . . . that `[c]orroboration through other sources of information reduced the chances of a reckless or prevaricating tale,' thus providing a `substantial basis for crediting the hearsay.'" *See Gates,* 462 U.S. at 244-45, 103 S. Ct. at 2335 (alteration in original) (quoting *Jones,* 362 U.S. at 269, 271, 80 S. Ct. at 735, 736).

Cooks's statements are also reliable because he admitted that he had previously delivered cocaine to the apartment. This was an admission against penal interest because it implicated Cooks as a co-conspirator with Satterwhite. "Admissions of crime, like admissions against proprietary interests, carry their own indicia

-13-

of credibility))sufficient at least to support a finding of probable cause to search." *United States v. Harris,* 403 U.S. 573, 583, 91 S. Ct. 2075, 2082, 29 L. Ed. 2d 723 (1971); *see Spinelli,* 393 U.S. at 425, 89 S. Ct. at 593 (White, J., concurring) ("[I]f . . . the informer's hearsay comes from one of the actors in the crime in the nature of an admission against interest, the affidavit giving this information should be held sufficient."); *United States v. Angulo-Lopez,* 791 F.2d 1394, 1397 (9th Cir. 1986) ("When the circumstances suggest veracity, such as an admission against penal interest, a statement made to an informant can be considered reliable."). Thus, the affidavit presented a substantial basis for crediting both the CI's information as to what he personally observed, and Cooks's statements to the CI. Accordingly, agent Hildreth provided the magistrate with more than a "bare bones" affidavit, and the good-faith exception applies.


## III

For the foregoing reasons, we **AFFIRM.**