# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-31096

United States Court of Appeals
Fifth Circuit

**FILED**
January 9, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

BILL W. WOMACK,

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:14-CR-182-1

Before ELROD, SOUTHWICK, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Bill Womack was charged in a six-count indictment after his estranged wife's SUV was damaged by what appeared to be an explosion. Womack filed a motion to suppress the evidence obtained as a result of a search warrant, arguing the supporting affidavit contained false information included with reckless disregard for the truth. The district court denied the motion to suppress. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-31096

## FACTUAL AND PROCEDURAL BACKGROUND

On August 25, 2014, Womack's estranged wife, Jan, discovered her GMC Yukon had been damaged in what appeared to be an explosives incident in Jonesville, Louisiana. The vehicle's rear window had been entirely destroyed, and its frame was bent inward and outward. The other windows were intact but had been spray-painted black, which gave the appearance of smoke damage. Inside the vehicle, the carcass of a rabbit had been strewn about as if it had exploded. The rabbit's remains were primarily concentrated behind the rear passenger's seat, but its parts were spread throughout the vehicle.

The Catahoula Parish Sheriff's Office did not have anyone trained to investigate explosions. The sheriff called the Louisiana State Police after observing the scene. The State Police determined an explosives incident likely occurred and therefore contacted the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) around 9:39 a.m. The ATF dispatched four agents — Joe Mann, Megan Taylor, Ron Meadows, and John Pias — to the scene. Mann, Taylor, and Meadows directly investigated the scene, while Pias conducted interviews with potential witnesses and other persons of interest. ATF Agent T.J. Boddie and Assistant United States Attorney Seth Reeg remained at ATF headquarters in Shreveport to prepare an affidavit in support of a search warrant for Womack's home.

When the agents arrived around lunchtime, they "were all under the impression that a car bomb had gone off and somebody had tried to kill somebody." As a result, the agents performed a post-blast investigation to determine if the damage to Jan's vehicle was, in fact, attributable to an explosion. During the investigation, the agents noted the damage to the rear window and to the interior of the car. Broken glass lay inside the vehicle and on the ground outside. Nonetheless, the rear passenger windows and front windows were all intact with no damage. The agents never found any

explosives or "explosive device components" — i.e., switches, timers, initiators, or containers — at the scene. Also, the agents contacted Agent Kathy Barton, who visited the scene with her dog trained in detecting the presence of explosives. The dog circled the vehicle but did not react to anything that may indicate the presence of explosive materials inside the vehicle or elsewhere. The investigation took several hours to complete.

The agents were unable to determine conclusively what caused the incident. Mann theorized there may have been an explosion outside the vehicle; for example, the perpetrator could have used a potato gun or other homemade device to propel the rabbit inside the vehicle. A trained dog would not alert to such a device.

While the investigation was ongoing, Pias and FBI Agent Randy Deaton attempted to locate Womack to question him. Pias spoke with Jan's sister, who reported Womack had threatened Jan the night before the incident; he stated that "[Jan] would be blown up if she put her key in the back door." Also, Deaton interviewed a "concerned individual" who was familiar with Womack, his home, and its surroundings. That person reported that he had seen Womack in possession of hand grenades, pipe bombs, a .50-caliber machine gun, and a Thompson .45-style machine gun. The witness allegedly saw these items a few months earlier on Womack's residential property in an outbuilding known as the "saddle house." After receiving this information, Pias drove to Womack's home. In the backyard, he saw a structure that fit the description of the saddle house. He also observed what appeared to be the burned carcass of a small animal in plain view; the remains apparently contained springs and wires. Pias did not examine the animal, which was later determined to be a stuffed toy.

During the investigation, Boddie (who is a licensed attorney) hurriedly drafted an affidavit in support of the search warrant so he could present it to

the magistrate judge at their 4:00 p.m. appointment. In doing so, Boddie relied on information he received from Pias through telephone conversations and text messages. The text messages from Pias to Boddie indicated that "[l]aw enforcement responded to the residence for what appeared to be an explosion" and that "[t]he explosion occurred in or around a black GMC Yukon." The text messages also set forth the information the "concerned individual" had provided regarding Womack, his weapons, and his property. Pias also detailed the threat Womack had made against his wife and the information about what appeared to be a burned carcass in Womack's backyard.

Boddie responded that he was drafting the affidavit but "need[ed] more [probable cause] based [on] the bomb that exploded." He asked for evidence of bomb components, including caps, black powder, or nails. Pias indicated that Mann, Taylor, and Meadows were still processing the scene and that he and Deaton intended to interview Womack. Boddie included the information from Pias in the affidavit, which was that the State Police responded to "what was later determined to be an explosives incident."

This phrase, that the occurrence had been "determined to be an explosives incident," is key to Womack's argument on appeal. Boddie received no additional information as to the results of the investigation before he presented the affidavit, and he did not contact other agents to obtain additional information. At the time Boddie presented the affidavit to the magistrate judge, the investigation was still ongoing, and the cause of the incident had not been identified.

Pias notified Mann that the search warrant had been issued as the post-blast investigation was "wrapping up." At that time, the investigation was "pretty much finished to a degree," but the agents never made a conclusive determination as to what caused the damage to Jan's vehicle. After being informed that the warrant had been issued, Mann decided to terminate the

investigation so the agents could travel to Womack's home and assist in executing the warrant. Mann did not recall whether he or his colleagues had spoken with Boddie during the course of their investigation. Nor did he recall whether Pias ever questioned him about the results of the investigation.

While executing the warrant, agents found numerous firearms and explosive devices in Womack's home and its outbuildings. As a result, Womack was charged with possession of a machine gun; possession of an unregistered destructive device; possession of an unregistered silencer; possession of unregistered firearms; possession of marijuana with intent to distribute; and possession of firearms in furtherance of a drug trafficking crime. Womack filed a motion to suppress the evidence obtained as a result of the warrant, arguing that the affidavit in support of the warrant contained statements that were included deliberately or with reckless disregard for the truth. Without those statements, he argued, the affidavit contained insufficient evidence to establish probable cause.

The magistrate judge held an evidentiary hearing to address Womack's arguments. After the hearing, the magistrate judge recommended that Womack's motion to suppress be denied to the extent that it contested the validity of the federal search warrant. The district court adopted the report and denied the motion to suppress. Womack then entered a conditional guilty plea to possession of an unregistered destructive device and possession of a firearm in furtherance of a drug-trafficking crime. He reserved the right to appeal the district court's denial of his suppression motion. The district court accepted the guilty plea and sentenced Womack to 117 months imprisonment, a three-year term of supervised release, and a $50,000 fine. Womack filed a timely notice of appeal.

No. 15-31096

DISCUSSION

On appeal, Womack argues that Boddie acted recklessly by stating in his affidavit that the incident in question was "later determined to be an explosives incident" when law enforcement had not made that determination. Without the false information, he argues, the affidavit does not sufficiently establish probable cause.

When considering a district court's denial of a motion to suppress, we review questions of law *de novo* and questions of fact for clear error. *United States v. Allen*, 625 F.3d 830, 834 (5th Cir. 2010). Whether an affiant deliberately or recklessly included false information in his affidavit is a factual finding that "cannot be disturbed unless it is clearly erroneous." *United States v. Looney*, 532 F.3d 392, 395 (5th Cir. 2008). A finding of fact is clearly erroneous when the court "is left with a definite and firm conviction that a mistake has been committed." *United States v. Scroggins*, 599 F.3d 433, 440 (5th Cir. 2010). Once false information is excised from an affidavit, the court determines the sufficiency of the affidavit independently of the district court and is "not limited by the clearly erroneous standard." *United States v. Froman*, 355 F.3d 882, 889 (5th Cir. 2004) (quotation marks omitted).

### I.   *False Information in the Affidavit*

"The Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands . . . ." *United States v. Leon*, 468 U.S. 897, 906 (1984). Instead, the exclusionary rule is a judicially created remedy designed to deter misconduct of government actors by prohibiting the use of evidence wrongfully obtained. *Id*. The good-faith exception modifies the exclusionary rule by permitting the consideration of all evidence, even evidence wrongfully obtained, "when law enforcement officers have acted in objective good faith or their transgressions have been minor." *Id*.

6

at 908. Under those circumstances, excluding the evidence obtained would not serve the objectives of the exclusionary rule. *Id.* at 920–21.

Where, as here, a search warrant is involved, this court reviews a district court's denial of a motion to suppress in two steps: "(1) whether the good-faith exception to the exclusionary rule applies; and (2) whether probable cause supported the warrant." *United States v. Satterwhite,* 980 F.2d 317, 320 (5th Cir. 1992) (footnote omitted). We do not reach the independent question of probable cause when the good-faith exception applies. *Id.*

Under the good-faith exception, which becomes relevant when the probable cause underlying a search warrant depends on erroneous information, the evidence obtained in a search is admissible when the officer's reliance on the truth of the information was objectively reasonable. *United States v. Sibley*, 448 F.3d 754, 757 (5th Cir. 2006) (quotation marks omitted). The good-faith exception does not apply in four situations, only one of which need be considered here, namely, if the issuing judge is misled by false information included in an affidavit deliberately or with reckless disregard for the truth. *United States v. Mays*, 466 F.3d 335, 343 (5th Cir. 2006). The court should consider the circumstances surrounding the issuance of the warrant when conducting the good-faith inquiry. *United States v. Pope*, 467 F.3d 912, 916 (5th Cir. 2006). Suppression is only required when "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23.

Here, the supporting affidavit contained false information. The scene of the incident strongly suggested the possibility of an explosion. For example, the rear window of the vehicle had been completely shattered; the other windows had been blackened, suggesting smoke damage; and the carcass of a rabbit had apparently been detonated inside the vehicle. Even so, no law enforcement officer ever "determined" that an explosive event occurred. The

investigation did not uncover a bomb or bomb components, which made it difficult to determine the cause of the vehicle's damage.  Thus, Boddie's statement in the affidavit that law enforcement responded "to what was later determined to be an explosives incident" was untrue.  Alleging that "the explosion occurred in or around a black GMC Yukon" was based on the unproven premise that there had been an explosion.

Neither party argues that Boddie deliberately misled the magistrate judge.  The question remains, then, whether he acted recklessly by reporting a conclusion that law enforcement had never reached.  Boddie was not at the scene of the investigation and relied on information Pias provided to him.  In the text messages, Pias reported "the explosion occurred in and around" the vehicle and that an animal was "splattered inside."  Before the magistrate judge, Boddie indicated he believed the statements were true at the time he included them in the affidavit.  If so, that could mean he was under the impression that the State Police and the sheriff's office, before contacting federal authorities, had determined an explosion occurred.

We note that Boddie was a licensed attorney and perhaps should have appreciated the importance of his language before presenting the affidavit to the magistrate judge.  *See United States v. Namer,* 680 F.2d 1088, 1094 (5th Cir. 1982).  He presented the affidavit while the investigation was ongoing and before the cause of the incident had been identified.  While he was drafting the affidavit, Boddie never checked with the agents at the scene of the crime and relied solely on Pias's uncorroborated assessment of the situation.

We pretermit any holding as to whether the good-faith exception applies; it is a close question.  Instead, we undertake the second step in the review: whether, even without the false information, there was probable cause supporting the warrant. *See Satterwhite,* 980 F.2d at 320.

## II.    *Probable Cause*

When a defendant shows by a preponderance of the evidence that information in a supporting affidavit is false, the court will set aside the false allegations and determine whether "the affidavit's remaining content is [sufficient] to establish probable cause." *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978).  The affidavit's content must be subjectively truthful to the extent that it may include hearsay, information from confidential informants, and "information within the affiant's own knowledge that sometimes must be garnered hastily." *Id.* at 165.  "Reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause," so this court affords "great deference" to a magistrate judge's determination. *Leon*, 468 U.S. at 914.

For probable cause, we look at the totality of the circumstances to determine if there was "a substantial basis for concluding that a search would uncover evidence of wrongdoing . . . ." *Illinois v. Gates*, 462 U.S. 213, 230–31, 236 (1982) (citation and internal alterations omitted).  In *Gates*, the Court considered the reliability of testimony from a confidential informant. *Id.* at 225–30.  The police were able to corroborate the informant's tip by independent investigation over several days. *Id.* at 226–27.  In its analysis, the Court noted that common sense must be applied when evaluating probable cause. *Id.* at 230.  Conclusory allegations are not sufficient; instead, the affiant must show the probability of criminal activity. *Id.* at 235, 239.

As in *Gates*, the standard for probable cause is satisfied here because the truthful allegations in the affidavit indicate that meaningful criminal activity had occurred prior to and contemporaneously with this incident.  The affidavit states a GMC Yukon used by Womack's estranged wife was severely damaged and had the remains of a "rabbit or some other small animal spread inside the vehicle."  Other information in the affidavit reinforces the significance of those

statements.  For example, ATF agents found what appeared to be the burned carcass of a small animal in Womack's backyard.  The agents also saw what appeared to be springs and wires in the animal's remains.  The affidavit could accurately have stated that it appeared, but had not yet been determined, that an explosion had occurred.  The fact the affidavit went further does not eviscerate the existence of probable cause.  Further, the affidavit summarizes the interview with a "concerned individual," who detailed Womack's extensive collection of grenades, pipe bombs, and machine guns.  Interestingly, Womack had no weapons registered in his name, so his possession of any firearm is a crime in itself under 26 U.S.C. § 5861.  The informant's allegations are sufficient to indicate, based on common sense alone, that some wrongdoing had occurred.  *See Gates*, 462 U.S. at 236.

Perhaps the affidavit's most damning allegation with respect to a finding of probable cause is Womack's threat to his estranged wife.  Womack's sister-in-law told agents that he intended to harm Jan through the use of explosives were she to return to their marital residence.  Out of context, that allegation alone does not indicate criminal activity with any degree of certainty, but the allegations must be considered together.

The magistrate judge was informed of evidence of a damaged vehicle containing remnants of a small animal; evidence of illegal possession of firearms and explosive devices; and Womack's verbal commitment to resort to such violence if his wife returned home.  The subject matter of the threat conceivably indicates Womack may be responsible for other destructive events occurring around his estranged wife.  As a result, the affidavit — without reference to the false allegations — is sufficient to support a finding of probable cause.  Any error by the district court in adopting the magistrate judge's report was harmless.  *See Namer*, 680 F.2d at 1097–98.

AFFIRMED.