**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-3254
_____

UNITED STATES OF AMERICA

v.

LEROY HENRY, JR.,

Appellant

_____

On Appeal from the United States District Court
for the Virgin Islands
(D.C. Civ. Action No. 3:20-cr-0005-001)
District Judge: Honorable Robert A. Molloy

_____

Argued:  December 6, 2022
_____

Before: CHAGARES, *Chief Judge*, GREENAWAY, JR., and FISHER, *Circuit Judges*.

(Opinion Filed: April 4, 2023)

Matthew A. Campbell, Esq. [ARGUED]
Office of Federal Public Defender
1336 Beltjen Road
Suite 202, Tunick Building
St. Thomas, VI 00802

     Counsel for Appellant

Delia L. Smith, United States Attorney
Meredith J. Edwards
Adam Sleeper
Office of the United States Attorney
5500 Veterans Drive
United States Courthouse, Suite 260

St. Thomas, VI 00802

Kenneth A. Polite, Jr., Assistant Attorney General
Lisa H. Miller, Deputy Assistant Attorney General
Kevin J. Barber, Esq. [ARGUED]
United States Department of Justice
Room 1716
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

       Counsel for Appellee

_____

OPINION[*]

_____

GREENAWAY, JR., *Circuit Judge.*

On December 25, 2019, the Federal Bureau of Investigation ("FBI") office of St. Thomas received an anonymous tip through Crime Stoppers, a community service that allows citizens to anonymously report a crime or criminal activity to law enforcement, that Leroy Henry Jr. ("Henry"), a convicted felon, was carrying an unregistered firearm. The tipster shared the specific location of the firearm, "the interior of his center console between the driver [and] passenger seat of his Infiniti car has a secret compartment that lifts out. And he keeps a loaded handgun in there." App. 142. When asked if Henry had plans to use the weapon, the tipster responded, "[y]es, revenge for brother's death." *Id.*

On January 10, 2020, FBI Task Force Officer Richard Dominguez ("TFO Dominguez") obtained a search warrant from a magistrate judge to search the car that

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

purportedly belonged to Henry. The affidavit in support of the search warrant included information received from the tipster and asserted that the agents had independently corroborated the following: Henry's brother had been shot and killed by an unknown shooter on December 21, 2019, Henry had a 2013 prior conviction for possession of an unlicensed firearm in the Virgin Islands, Henry did not have a valid license to possess a firearm in the Virgin Islands, Henry was the registered owner of a 2007 Infiniti M35, and the target vehicle was parked outside of Henry's residence.

On January 14, 2020, TFO Dominguez and other agents executed the search warrant. When arrested, Henry agreed to accompany the agents to the FBI office. In the course of a search of Henry's car conducted at the FBI office, agents found a loaded firearm and two magazines of ammunition in a secret compartment in the vehicle's center console. Simultaneously, TFO Dominguez read Henry his *Miranda* rights. Henry confirmed that he understood those rights. During the interview, Henry admitted to his prior felony conviction, conceded that he knew that he was not permitted to have a firearm, and admitted that he possessed the firearm.

Henry was indicted in short order on two counts—being a felon in possession of a firearm and being a felon in possession of ammunition—in violation of 18 U.S.C. § 922(g)(1).

### a. DNA Testing and Pre-Trial Motion to Suppress

In March 2020, law enforcement conducted DNA testing to determine whether DNA samples from the firearm matched Henry. Four technicians, working under the direction of forensic examiner Jaclyn Garfinkle, performed the pre-analysis steps of the laboratory process: extraction, quantification, amplification, and separation. Garfinkle analyzed the data generated from the pre-analysis steps and prepared the lab report. She found DNA from three individuals from the sample taken from the firearm and concluded that it was 78 septillion times more likely than not that Henry was one of those three people.

Before the trial, Henry filed a motion to suppress the evidence seized from his car.[1] Henry argued that the search warrant was not supported by probable cause due to the anonymous nature of the tip. The Government contended that the good faith exception to the exclusionary rule applied. The District Court found that the tip did not provide probable cause sufficient for the search warrant. The District Court noted that the information provided was too easily predicted to establish the tipster's reliability and could not establish that the tipster had a "special familiarity" with Henry. App. 18. However, the District Court agreed with the Government's alternative argument and found that the good faith exception to the exclusionary rule did apply as "it would be

---

[1] Henry also argued that his statements to the FBI were made involuntarily and could not be admitted under the Self-Incrimination Clause of the Fifth Amendment. The District Court held that Henry had knowingly and voluntarily waived his *Miranda* rights and that the circumstances of his interview were not coercive or deceptive enough to make his statements involuntarily. Henry does not contest this issue on appeal.

unrealistic here to conclude that TFO Dominguez should have recognized, questioned, and correctly applied the nuances of the anonymous tip corroboration doctrine." App. 21.

### b. DNA Testimony and Confrontation Clause

At trial, the Government called Garfinkle as a witness and offered her as a DNA expert. During voir dire, Garfinkle stated that while she had supervised the DNA testing, she did not execute the "actual manual steps in the laboratory." App. 432. The four lab technicians conducted these steps. Based on Garfinkle's statement, the defense moved "to exclude the DNA testimony in its entirety" because its admission would violate the Confrontation Clause. App. 446. The District Court granted the motion because Garfinkle "was not physically present when the testing was conducted." App. 448. During his case-in-chief, Henry presented witnesses who testified that other people occasionally used Henry's Infiniti. In response, the Government called as rebuttal witnesses three of the four technicians who conducted the DNA testing; however, Lily Wong, the absent technician, was on maternity leave. The District Court found that Wong's absence presented no violation of the Confrontation Clause. The technicians testified on the DNA collection and preparation. Garfinkle testified on overseeing the DNA testing process and her analysis of the testing conducted.

Henry was found guilty of Count One, firearm possession, and not guilty of Count Two, ammunition possession. He was sentenced to 33 months of imprisonment followed by two years of supervised release. This timely appeal follows.

## II.   JURISDICTION

The District Court had jurisdiction under 18 U.S.C. § 3231 and 48 U.S.C. § 1612.

5

We have jurisdiction under 28 U.S.C. § 1291.

### III.  DISCUSSION

#### a.  The District Court Did Not Err in Denying Henry's Motion to Dismiss

##### i.  Standard of Review

We start with Henry's argument that the District Court erred in denying his motion to dismiss.  We review the factual findings of the District Court for clear error and its legal conclusions de novo.  *United States v. Werdene*, 883 F.3d 204, 209 (3d Cir. 2018).  As the good faith exception applies, we do not need to determine whether the warrant was supported by probable cause.  *See*, *e.g.*, *United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents*, 307 F.3d 137, 145 (3d Cir. 2002).[2]

---

[2] The parties spend a considerable amount of their respective briefs discussing whether the warrant was supported by probable cause. Courts have "informed discretion" in "turning immediately to a consideration of the officers' good faith." *United States v. Leon*, 468 U.S. 897, 925 (1984). In instances where "probable cause and particularity arguments 'involve . . . novel question[s] of law whose resolution is necessary to guide future actions by law enforcement officers and magistrates'" do courts first reach the issue of probable cause. *Ninety-Two Thousand*, 307 F.3d at 145 (quoting *United States v. Satterwhite*, 980 F.2d 317, 320 (5th Cir. 1992)) (internal citations omitted). Henry presents no novel questions of law, and accordingly, we can turn directly to the good faith issue.

### ii. The Search Warrant for Henry's Car Survives Scrutiny Based on the Good Faith Exception to the Exclusionary Rule

The exclusionary rule is applied "only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule" to ward against unreasonable searches and seizures by law enforcement. *United States v. Leon*, 468 U.S. 897, 918 (1984). Courts must perform a "rigorous" test to measure the "deterrence benefits of exclusion" against "substantial social costs." *Davis v. United States*, 564 U.S. 229, 237-38 (2011).

The good faith exception buttresses this test.[3] The good faith exception prevents suppression of evidence when the executing officers acted in "good faith" or "objectively reasonable reliance" on a "subsequently invalidated search warrant." *Leon*, 468 U.S. at 922. Thus, in instances where an officer acted illegally but "in the objectively reasonable belief that [his] conduct did not violate the Fourth Amendment. . . . [the exclusionary rule] should not be applied[] to deter objectively reasonable law enforcement activity." *Id.* at 918-19. Further, the exclusionary rule is only implemented when law enforcement conduct is "deliberate, reckless, or grossly negligent." *Herring v. United States*, 555 U.S. 135, 144 (2009).

Accordingly, the test to determine if the good faith exception applies is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23; *see also United States v. Loy*,

---

[3] Henry spends the majority of his brief arguing that the good faith exception was wrongly decided. Our adherence to *stare decisis* precludes any comment on the validity or merit of Supreme Court precedent we are duty bound to follow.

191 F.3d 360, 367 (3d Cir. 1999). "[A]ny defects in the warrant" and "the officer's conduct in obtaining and executing the warrant and what the officer knew or should have known" are both evaluated by courts. *United States v. Franz*, 772 F.3d 134, 147 (3d Cir. 2014). Courts must recognize that law enforcement officers do not have an expert grip on the law and are not "expected to question the magistrate's probable-cause determination." *Leon*, 468 U.S. at 921. *See also Malley v. Briggs*, 475 U.S. 335, 346 n.9 (1986) ("It is a sound presumption that the magistrate is more qualified than the police officer to make a probable cause determination, and it goes without saying that where a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable." (internal quotation marks and citation omitted)).

There are four instances, however, where the good faith exception does not apply:

> (1) where the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;
> (2) where the magistrate judge abandoned his or her judicial role and failed to perform his or her neutral and detached function;
> (3) where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or
> (4) where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*United States v. Tracey*, 597 F.3d 140, 151 (3d Cir. 2010). Henry argues that the third exception applies in the instant case, and the District Court found that it did not.

The standard to establish the third exception to the good faith rule "is a high one." *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012). The burden is on the defendant to show that the magistrate judge made an error "so obvious that a law enforcement

8

officer, without legal training, should have realized, upon reading the warrant, that it was invalid and should thus have declined to execute it." *Ninety-Two Thousand*, 307 F.3d at 146. While we need not determine whether there was probable cause, the Supreme Court and this Circuit have defined probable cause as "a 'fluid concept,' turning on 'the factual and practical considerations of everyday life,' which requires only a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Caesar*, 2 F.4th 160, 171 (3d Cir. 2021) (quoting *Illinois v. Gates*, 462 U.S. 213, 231-32, 238 (1983)). We must give "great deference" to the magistrate judge's determination that probable cause existed. *See Gates*, 462 U.S. at 236.

Here, the good faith exception applies. The affidavit was not devoid of any indicia of probable cause. It was not "bare bones" or "paltry." *United States v. Pavulak*, 700 F.3d 651, 664-65 (3d Cir. 2012) (quoting *United States v. Zimmerman*, 277 F.3d 426, 438 (3d Cir. 2002)). The information was particularized to Henry and plentiful. It contained information about Henry's circumstances, prior felony conviction, and a hidden compartment in the car registered to him. The information came less than a week after Henry's brother's death and raised concerns that Henry would use the weapon in retaliation. The affidavit was not based solely on the tip; the officers corroborated the information received in the tip.

Henry presents no persuasive argument that the good faith exception should not apply. He claims that "[a] reasonable officer in [TFO Dominguez's] position would have known the corroboration requirements established by the Supreme Court decades earlier" and thus "cannot be said to have acted in objective good faith reliance on the warrant."

9

Appellant's Br. at 29-30. We disagree. As noted above, the burden is on Henry to show that the magistrate judge made an error "so obvious" that TFO Dominguez would have known the warrant was invalid "without legal training." *See Ninety-Two Thousand*, 307 F.3d at 146.

TFO Dominguez did independently corroborate the information contained in the tip. He confirmed: Henry's brother's death, Henry's prior felony record, Henry's lack of a firearm license, and that Henry was the registered owner of a car of the same make and model as the one specified in the tip. To suggest a lack of corroboration, as Henry does, misrepresents the facts of this case. In the aggregate, the affidavit contained a basis for believing Henry was a felon possessing an unlicensed firearm. Thus, Henry failed to show that the District Court erred in applying the good faith exception. Our precedent does not mandate the analysis Henry suggests. There is no error.

### b. The Forensic Examiner's Testimony Did Not Violate the Confrontation Clause of the Sixth Amendment

#### i. Standard of Review

This Court exercises "plenary review over Confrontation Clause challenges." *See United States v. Moreno*, 809 F.3d 766, 773 (3d Cir. 2016) (quotations omitted) (quoting *United States v. Berrios*, 676 F.3d 118, 125 (3d Cir. 2012)).

#### ii. Testimonial Statements and the Confrontation Clause

The Sixth Amendment's Confrontation Clause states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause prevents the

10

Government from introducing a standalone "testimonial" statement. *See Crawford v. Washington*, 541 U.S. 36, 68 (2004) ("Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.") A statement is testimonial when it is a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* at 51. There is no "forensic evidence" carve-out to the Confrontation Clause, and a lab report falls under the category of testimonial statements. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 308-10, 317-321 (2009) (concluding that "'certificates of analysis' showing the results of a forensic analysis performed on [] seized substances" qualified as testimonial statements that required the testimony of the analysts who performed the tests).

Henry argues that it is not the report of the DNA testing that presents the Confrontation Clause issue, but the absence of one of the four technicians during the trial whose participation in the testing process and the subsequent results constitute testimonial statements. He argues that "[i]t is absolutely clear that [Garfinkle's] testimony depended in critical part on the work, analysis, reports, and data produced by a non-testifying declarant—namely Lily Wong." Appellant's Br. at 48.

Henry directs the Court to *Bullcoming v. New Mexico*, 564 U.S. 647, 654 (2005) to support his claim that Garfinkle's "surrogate testimony was insufficient to protect the interests protected by the Confrontation Clause" as "Garfinkle conducted none of the underlying tests." Appellant's Br. at 48-49. However, Henry muddies the facts of *Bullcoming* to present it as analogous to the instant case when it is clear that no such

11

analogy exists. In *Bullcoming*, New Mexico presented as a witness, not the analyst who signed a lab certificate, but "another analyst who was familiar with the laboratory's testing procedures." 546 U.S. at 651. The Supreme Court held that such surrogate testimony did not meet the Confrontation Clause standard. *Id*.

Here, however, Henry had the opportunity to examine not only Garfinkle, the signing analyst, but three of the lab technicians who participated in the DNA analysis at trial. But Henry wants more. He wishes to question the fourth absent analyst on her "training, experience, methodology, judgment calls, or the process used to conduct the DNA testing." Appellant's Br. at 49. That is not necessary here. Garfinkle gave expert testimony to explain her analysis of data that Lily Wong and the other technicians helped to generate. App. 699-702. Garfinkle did not, as Henry suggests, testify as to what Wong did or did not do. Therefore, there is nothing in Garfinkle's testimony that is attributed to Wong that would be "surrogate testimony" in violation of the Confrontation Clause. The testimony of Garfinkle and the three lab technicians more than satisfies the Confrontation Clause.

Accordingly, the District Court did not err in admitting Garfinkle's DNA testimony.

## IV.  CONCLUSION

For the reasons above, we will affirm the judgment of conviction of the District Court.

12